No. 81-237

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

_____

HARRY G. and LILLIAN MARTZ,
husband and wife, et al.,

Plaintiffs and Respondents,

vs.

BUTTE-SILVER BOW GOVERNMENT,
STATE OF MONTANA, et al.,

Defendants and Appellants.

_____

Appeal from: District Court of the Second Judicial District,
In and for the County of Silver Bow
Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

For Appellants:

Robert M. McCarthy argued, County Attorney, Butte, Montana

For Respondents:

Cannon, Parish and Sheehy, Helena, Montana
Ross W. Cannon argued and Edmund F. Sheehy argued,
Helena, Montana

_____

Submitted: October 27, 1981

Decided: January 26, 1982

Filed: JAN 26 1982

_Thomas J. Kearney_
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant appeals from summary judgment in the District Court of Butte-Silver Bow in which Butte-Silver Bow Ordinance No. 53 was found to be (1) invalid because it was enacted in violation of Montana laws governing zoning, and (2) unconstitutionally exclusive because it restricted mobile homes and mobile home parks to an impermissibly small percentage of the area zoned. We vacate the summary judgment and remand to the District Court for further proceedings.

The following issues are presented to this Court for review:

(1) Did the District Court err in concluding that Ordinance No. 53 was not enacted in accordance with Montana law governing planning and zoning?

(2) Did the District Court err in holding Ordinance No. 53 unconstitutional because of its exclusionary effect on mobile homes and mobile home parks?

(3) Did the District Court err when it granted plaintiffs' amended motion for summary judgment?

On March 14, 1972, the Butte-Silver Bow City-County Planning Board adopted a comprehensive master plan for the City of Butte and portions of Silver Bow County. The master plan covered the entire jurisdictional area of that Planning Board and was accepted by both the city government and the county government within a few months.

In May of 1977, the City of Butte and the County of Silver Bow consolidated into a single political entity known as "Butte-Silver Bow," the jurisdictional area of which was all of Silver Bow County except Walkerville.

In August of 1978, the government of Butte-Silver Bow approved and enacted Ordinance No. 53, which had been recommended to them in January of 1978 by the old City-County Planning Board, acting as the Zoning Commission. Ordinance No. 53 covered the entire jurisdictional area of the old City-County Planning Board, but no more. At the time it was enacted, the new government of Butte-Silver Bow had no planning board and no comprehensive plan for its total jurisdictional area.

Ordinance No. 53 zones an area of 44,134.3 acres comprising the City of Butte and land within four-and-one-half miles of the Butte city limits prior to consolidation. Ordinance No. 53 permits mobile homes on private lots in areas zoned R-4 and R-4S but permits mobile home parks only in areas zoned R-4. The minimum lot size in areas zoned R-4S is one acre. 95% of the total area zoned is zoned residential, but only 2.2% is zoned R-4 and 4.5% zoned R-4S. The percentage of vacant land in the R-4 and R-4S areas amounts, respectively, to .9% and 4.2% of the total area zoned.

The parties agree that there is a shortage of adequate on-site conventional housing in the Butte-Silver Bow area, and that, by 1990, some 2,250 new homes will be needed (4,440 considering displacement and replacement of existing housing).

On April 4, 1979, plaintiffs Martz requested permission of the Butte-Silver Bow office of Building and Code Enforcement to place a mobile home upon their land on Eagle Street in Butte, in an area zoned R-2. Their request was denied, but the Martzes commenced installing a mobile home anyway. On April 16, 1979, Butte-Silver Bow served plaintiff Great Western Trailer Sales with a compliance order to stop installing

the Martz mobile home. The next day, a Building and Code Enforcement officer informed the Martzes that they would have to remove their mobile home from the Eagle Street lot.

Plaintiffs filed their complaint on April 23, 1979, and obtained a temporary restraining order, which, by stipulation, became an injunction pendente lite. On March 31, 1981, the District Court granted plaintiffs' amended motion for summary judgment, holding that:

(1) There were no genuine issues of material fact;

(2) Ordinance No. 53 was invalid because it was not enacted in accordance with Montana law governing planning and zoning; and

(3) Ordinance No. 53 was unconstitutional because of its exclusionary effect upon mobile homes and mobile home parks.

Defendants appeal. Execution of the order permanently enjoining enforcement of Ordinance No. 53 has been stayed pending appeal.

I.

In deciding that Ordinance No. 53 was not enacted in accordance with Montana law, the District Court relied upon sections 76-1-601 and 76-2-304, MCA, which state, respectively, in pertinent part:

> "The planning board shall prepare and propose
> a master plan for the jurisdictional area. . ."

and

> "Such [municipal zoning] regulations shall
> be made in accordance with a comprehensive
> plan . . ."

The District Court concluded that these statutes require a master plan embracing the jurisdictional area of the planning board for the new, consolidated entity (Butte-Silver Bow) before the governing body of that entity may enact zoning

-4-

regulations.

The District Court also relied upon this Court's decision in Allen v. Flathead County (1979), ____ Mont. ____, 601 P.2d 399, 36 St.Rep. 1839, wherein we held certain zoning regulations in Flathead County to be invalid. A planning board for the whole of Flathead County was created in 1972. Several years later, the Flathead County Commissioners created a separate, smaller zoning district within Flathead County and adopted regulations pursuant to a 1974 zoning plan for that smaller district. We held as follows:

> ". . .[T]he clear and unambiguous language of section 76-2-201, MCA, requires that a county adopt a comprehensive development plan for an entire jurisdictional area. Only after the adoption of such a plan may a county adopt zoning regulations." Allen v. Flathead County, ____ Mont. ____, 601 P.2d at 402, 36 St.Rep. at 1842.

The District Court concluded that Allen, like the above statutes, required a comprehensive master plan for all of Butte-Silver Bow before valid zoning regulations could be enacted.

Section 76-2-201, MCA, requires "a comprehensive development plan for jurisdictional areas pursuant to chapter 1" before county commissioners are authorized to enact zoning regulations. Chapter 1 (Part 5 - Jurisdictional Area) is quite clear that the jurisdictional areas contemplated are those of the planning boards, not the governing entities. In Allen, supra, ____ Mont. at ____, 601 P.2d at 400, 36 St.Rep. at 1840, the parties stipulated that the jurisdictional area of the planning board was all of Flathead County (except Columbia Falls). The MCA sections on planning and zoning (Title 76, Chapter 2) indicate the need for a master plan for the jurisdictional area, but do not specify whether the

area referred to is that of the planning board or that of the governing body. In light of section 76-2-201, MCA, above, we find that the jurisdictional area referred to in these sections is that of the planning board.

In most cases, as in Allen, supra, the jurisdictional area of the planning board will be identical to that of the governing body. In fact, that is now the case in Butte-Silver Bow, where, in December of 1978, some months after the effective date of Ordinance No. 53, the Council of Commissioners created a Butte-Silver Bow Planning Board. But at the time Ordinance No. 53 was enacted, the Butte-Silver Bow Planning Board did not exist. The Council of Commissioners, in enacting Ordinance No. 53, relied upon a properly-enacted comprehensive plan for the entire jurisdictional area of the planning board which developed that plan. Under the circumstances, that is sufficient.

Plaintiffs do not argue that the comprehensive plan adopted by the city-county authorities in 1972, prior to consolidation, was improperly enacted. They do question whether the extension of jurisdictional area pursuant to section 76-1-505, MCA, to four-and-one-half miles beyond the Butte city limits conflicts with section 76-2-310(2), MCA, limiting extension of municipal zoning to three miles beyond the city limits of larger cities such as Butte. We need only point out that section 76-1-505, MCA, explicitly addresses the extension of boundaries of city-county planning board jurisdictional area and is controlling in this case.

We are aware that this interpretation of Montana's zoning statutes could encourage newly-consolidated governing bodies to delay creating their own planning boards in order to quickly enact zoning regulations in accordance with pre-existing properly adopted master plans for smaller areas

within the consolidated area. That is, nevertheless, preferable to mandating a period of inactivity from the time of consolidation to the time the new government can create a planning board and that board can develop a comprehensive plan for the jurisdictional area of the consolidated government.

It is true, as this Court noted in Allen, supra, that, when a master plan is in the works, a county government may adopt interim zoning as an emergency measure, which zoning cannot continue effective for more than two years. Section 76-2-206, MCA. But, in this case, the new government had neither planning board nor comprehensive plan; nor was the development of a comprehensive plan contemplated until well after the information relating to population densities and land use became available through the 1980 United States Census. We cannot say that the circumstances here supported interim zoning.

We find that Butte-Silver Bow Ordinance No. 53 was enacted in accordance with Montana law.

## II.

The second issue raised by appellants is whether the District Court erred in concluding that Ordinance No. 53 had an unconstitutionally exclusionary effect upon mobile homes and mobile home parks. The District Court relied upon defendants' answers to interrogatories, which stated that (1) only .9% of the total area zoned was vacant land zoned R-4 (mobile homes and mobile home parks permitted) and only 4.2% was zoned R-4S (mobile homes permitted -- one acre minimum lot size); and (2) by 1990, 2,550 new dwelling units would be required (4,440, considering replacement) to satisfy the shortage of satisfactory on-site conventional housing.

The District Court concluded that a municipality must insure that a fair share of housing is within the reach of persons of low and moderate incomes; where a zoning ordinance limits mobile home parks to less than 1% of the land zoned, the zoning is tantamount to an exclusionary ban on mobile home parks and is unconstitutional; and pointed out that a zoning ordinance which permits mobile homes on lots having a large minimum size may be exclusionary. With regard to this zoning ordinance, the District Court further concluded in part:

> "The minimum lot size in an R-4S zone, as shown in Finding of Fact No. VI, is exclusionary since mobile homes are permitted on smaller lots only in R-4 zones which comprise 2.2% of the total land area zoned as set out in Finding of Fact No. X. [9% of vacant R-4 zoned land.]

> "The practical effect of allowing mobile homes in R-4S zones where the minimum lot size is one acre is to exclude low and moderate income families desiring to live in mobile homes from locating them in the Butte-Silver Bow area. It is especially so since mobile homes provide the only available, decent and suitable form of low cost housing. Oak Forest Mobile Home Park, Inc. v. City of Oak Forest, 27 Ill. App. 3d 303, 326 N.E. 2d 473 (1975).

> ". . . [T]he amount of land made available for mobile home use under Ordinance No. 53, is de facto exclusionary and unconstitutional because it has the practical effect of banning additional mobile homes from Butte-Silver Bow. Mobile homes and mobile home parks are legitimate land uses and may not be banned from a community. Colonial Park for Mobile Homes, Inc. v. New Britain Township, 408 A.2d 1160 (Pa. 1979)."

Defendants concede that it would be an improper exclusionary device to prohibit mobile homes or to confine them only to mobile home parks. Defendants argue that the ordinance does provide extensive area outside of mobile home parks for mobile homes which do not meet the Uniform Building Codes (UBC) standards. Of particular significance is the contention of defendants that mobile homes which meet UBC standards are

not excluded from R-1, R-2 or R-3 zones. Defendants point out that under the ordinance, if mobile homes meet UBC requirements, they can be located in any residential zone. Defendants further argue that mobile homes which fall below UBC standards may pose a real and substantial threat to health and welfare.

From the definitions contained in Ordinance No. 53, we are not able to determine if a mobile home meeting UBC standards could be classed as a "modular dwelling" or a "residence," as contended by defendants. The record fails to show if a mobile home can be made to conform to UBC standards, and thereby become acceptable as a residence in zones R-1, R-2 and R-3. The record does not show any comparison of the standards required under the UBC and the United States Department of Housing and Urban Development (HUD).[1] The defendants' answer to an interrogatory established that there is a distinct difference between the UBC and the HUD standards:

> "In addressing the issue relating specifically to the quality of individual housing units in Butte-Silver Bow, the Council of Commissioners adopted the Uniform Building Codes as a minimum community standard for housing development. Mobile Homes, however, are constructed under an entirely different set of codes which were developed by the United States Department of Housing and Urban Development. The two codes take a distinctly different approach toward housing construction."

If a mobile home meeting HUD standards can be made to conform to UBC standards without unreasonable expense, and if such conformity renders a mobile home acceptable in all residential zones, there is no basis to claim an exclusion. However, if UBC standards are not attainable by most mobile homes, as suggested by counsel in the course of oral arguments, then

---

[1] All mobile homes manufactured after June 15, 1976, must conform to HUD standards. (Defendants' Admission No. 9, dated July 8, 1980.)

mobile homes could be effectively banned from residential

zones R-1, R-2 and R-3 under the zoning ordinance, raising

the question of an unconstitutional exclusion. The record

before us therefore discloses a critical issue of material

fact. This Court has held that the question to be determined

on a motion for summary judgment is whether there exists a

genuine dispute of material facts, stating in Byrd v. Bennett

(1981), ____ Mont. ____, ____ P.2d ____, 38 St.Rep. 1083,

1084, as follows:

> "In a summary judgment proceeding, the formal
> issues presented by the pleadings are not
> controlling. The question to be decided in a
> motion for summary judgment is whether there
> exists a genuine dispute over material facts.
> The party moving for summary judgment has the
> burden of showing the complete absence of
> material factual questions. The proof prof-
> fered by the movant is closely scrutinized.
> The party opposing the motion may block sum-
> mary judgment by offering proof that a dis-
> pute exists regarding facts material to the
> claim for relief."

This Court has held that summary judgment is appropriate when

the movant shows a complete absence of genuine issues of

material fact and the defendants fail to present evidence of

such an issue. Willson v. Taylor (1981), ____ Mont. ____,

____ P.2d ____, 38 St.Rep. 1606, 1611. The presence of the

above described issues of material fact which are critical

to the determination of this case makes a summary judgment

decision not appropriate. Without additional information in

the record before it, the District Court is unable to determine

if the UBC standards referred to in the zoning ordinance

effectively exclude mobile homes from certain areas.

We reverse the lower court and remand with instructions

to enter a judgment finding that Butte-Silver Bow Ordinance

No. 53 was properly enacted in accordance with Montana law;

and with instructions to the District Court to conduct such

further proceedings as the District Court finds to be necessary in order to determine the facts regarding the standards of construction required for the construction of mobile homes under the UBC standards and the HUD standards, and thereafter again consider the claim of the plaintiffs.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices