(No. 93462.-

SONYA D. HAWTHORNE, Appellee, v. THE VIL-
LAGE OF OLYMPIA FIELDS *et al.*, Appellants.

*Opinion filed April 17, 2003.*

GARMAN, J., joined by KILBRIDE, J., dissenting.

John B. Murphey and Judith N. Kolman, of Rosenthal, Murphey & Coblentz, of Chicago, for appellants.

Jonathan K. Baum and Sarah E. Smith, of Katten, Muchin, Zavis & Rosenman, and Amy L. Zimmerman, all of Chicago, for appellee.

Victor P. Filippini, Jr., Barbara A. Adams and Elliot M. Regenstein, of Holland & Knight, L.L.P., of Chicago, for *amici curie* Villages of Grayslake, Hinsdale, La Grange and Lake Zurich.

Ronald N. Schultz, Rockford Legal Director (Kathleen Elliott, of counsel), for *amicus curiae* City of Rockford.

Carolyn Shapiro, of Miner, Barnhill & Galland, of Chicago, for *amici curiae* Voices for Illinois Children *et al.*

JUSTICE RARICK delivered the opinion of the court:

The issue we are asked to resolve in this case is whether a non-home-rule unit of local government may use its statutory zoning authority to prevent operation of a home day-care facility licensed by the State of Illinois. On cross-motions for partial summary judgment, the circuit court held that it may not. The appellate court affirmed. 328 Ill. App. 3d 301. For the reasons that follow, we now affirm the judgment of the appellate court.

Under Illinois law, the operation of child-care facilities is regulated by the state. The governing statute is the Child Care Act of 1969 (225 ILCS 10/1 *et seq.* (West 2000)). Under the Act, "[a]ny person, group of persons or corporation who or which receives children or arranges for care or placement of one or more children unrelated to the operator" must apply for and obtain a license from the Department of Children and Family Services (DCFS). 225 ILCS 10/4(a) (West 2000). Unless certain exemptions apply, operation of a child-care facility without the requisite state license is prohibited. 225 ILCS 10/3(a) (West 2000). Violators are subject to criminal prosecution. 225 ILCS 10/11, 18 (West 2000).

One type of child-care facility for which licensure is authorized by the Child Care Act is a "day care home." A day-care home is a family home that receives "more than 3 up to a maximum of 12 children for less than 24 hours per day." 225 ILCS 10/2.18 (West 2000). The specified number of children includes the family's own natural or adopted children and all other persons under the age of 12. 225 ILCS 10/2.18 (West 2000).

In 1999, plaintiff, Sonia Hawthorne, and her husband, Marcus, purchased a single family home at 3509 Ionia Avenue in the Village of Olympia Fields. The home was

located across the street from a local school. The Haw-
thornes bought the property in the hope that they could
provide home day care there. After moving into the
residence, plaintiff applied to DCFS for licensure under
the Child Care Act as a day-care home. Her application
was approved. DCFS issued a license to plaintiff to oper-
ate a day-care home at the Ionia Avenue property begin-
ning October 28, 1999.

Once she moved in and obtained her license from
DCFS, plaintiff contacted Olympia Fields to obtain a
building permit so that she could remodel portions of the
premises. The purpose of the remodeling was to facilitate
the operation of the day-care home. The precise nature
of the proposed remodeling is unclear from the record,
but appears to have included installation of a second
kitchen. By letter dated December 16, 1999, Olympia
Fields advised plaintiff and her husband that operation
of a day-care home at the Ionia Avenue location did not
comply with the village's zoning ordinance and that they
would have to obtain a zoning variance before their ap-
plication for a building permit could proceed.

Plaintiff's home on Ionia Avenue is zoned residential.
Although Olympia Fields' zoning ordinance permits
"home occupations" in residential zones (Olympia Fields
Municipal Code §§ 22—187, 22—207, 22—227 (Ord. No.
17, as revised May 11, 1981)), the village did not believe
that a licensed day-care home was such a use.

A "home occupation" is defined by Olympia Fields'
zoning ordinance as

> "any gainful occupation or profession engaged in by an oc-
> cupant of a dwelling unit as a use which is clearly incidental
> to the use of the dwelling unit for residential purposes.
> The 'home occupation' shall be carried on wholly within
> the principal building or within a building accessory
> thereto, and only by members of the family occupying the
> premises ***. There shall be no exterior display, no exterior
> sign except as allowed by the sign regulations for the

district in which such 'home occupation' is located, no exterior storage of materials, no other exterior indication of the 'home occupation,' or variation from the residential character of the principal building, and no offensive noise, vibration, smoke, dust, odors, heat or glare shall be produced. Offices, clinics, doctors' offices, hospitals, barbershops, beauty parlors, dress shops, millinery shops, tearooms, restaurants, tourist homes, animal hospitals and kennels, among other things, shall not be deemed to be home occupations." Olympia Fields Municipal Code § 22—3 (Ord. No. 17, as revised May 11, 1981).

Olympia Fields did not think that plaintiff's use of her home met the foregoing definition of "home occupation" for three reasons. First, it would not be carried out "only by members of the family occupying the premises." Plaintiff planned to hire someone from outside the family to assist her. Second, parents would be picking up and dropping off children at the house, an activity the village believed would contravene the requirement that there be no "exterior indication of the 'home occupation.' " Finally, the proposed addition of a second kitchen would, in the village's view, be a "variation from the residential character of the principal building."

Because Olympia Fields believed that plaintiff's licensed day-care home did not meet the requirements of a "home occupation" and did not otherwise qualify as a permissible use under the village's zoning ordinance, plaintiff applied to the village for a zoning variance. Her application, dated January 5, 2000, requested two forms of relief: permission to operate a day-care home as a home occupation and a variance to allow her to employ at the facility someone other than a family member who resided at the home.

A public hearing on plaintiff's application for the zoning variance was conducted by Olympia Fields' board of trustees on January 24, 2000. At the conclusion of the hearing, which included statements from various neigh-

bors and relatives of plaintiff, the board of trustees unanimously denied plaintiff's application.

Plaintiff subsequently initiated this civil action in the circuit court of Cook County against Olympia Fields and the village administrator in her official capacity. Plaintiff's complaint, as amended, contained eight counts. Count I alleged that Olympia Fields' determination that plaintiff's day-care home did not constitute a "home occupation" within the meaning of the village's zoning ordinance was erroneous, arbitrary, capricious, unreasonable and contrary to state law. Count II averred that Olympia Fields' interpretation of the "home occupations" provision of its zoning ordinance had the effect of wholly excluding home day care from the village and that such action is beyond the village's power. Count III claimed the Child Care Act and the DCFS regulations promulgated thereunder preempted Olympia Fields' authority to use its zoning ordinance to impede the operation of day-care homes authorized by the state.

In count IV, plaintiff charged that the license issued to her by the state is a type of property entitled to protection by the fifth amendment of the United States Constitution (U.S. Const., amend. V) and that defendants' interpretation of the village zoning ordinance to deny her permission to operate a day-care home pursuant to that license constituted an unconstitutional taking without just compensation. Count V made a parallel claim under article I, section 15, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 15). Counts VI and VII alleged, respectively, denials of equal protection and due process in violation of article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2). Count VIII claimed that defendants' action denied plaintiff her due process rights under the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV).

In each count, plaintiff sought declaratory and injunctive relief and damages. Counts IV and VIII, which alleged violations of plaintiff's federal constitutional rights and invoked the provisions of 42 U.S.C. § 1983, also included a request for an award of plaintiff's attorney fees pursuant to 42 U.S.C. § 1988. Following an unsuccessful effort by defendants to remove the cause to federal court, plaintiff moved for partial summary judgment as to counts I through V. Defendants opposed that motion and filed a cross-motion for summary judgment against plaintiff on counts II through V.

A hearing was held on the parties' cross-motions. In the course of that hearing, count I of the complaint was dismissed as moot. Following various developments not relevant here, the circuit court entered a detailed written order addressing the merits of the parties' respective requests for summary judgment. It granted summary judgment in favor of plaintiff and against defendants on count II of her complaint, declaring that the "home occupations" provision of Olympia Fields' zoning ordinance was null and void to the extent that it excludes or has the effect of excluding the operation of licensed day-care homes in the village.

With respect to count III, the court granted the parties' respective motions for summary judgment in part and denied them in part. The court declared that Olympia Fields could regulate day-care homes, but only if its regulations did not conflict with the Child Care Act or the DCFS regulations promulgated thereunder. To the extent that its zoning ordinance was interpreted to regulate day-care homes "in a manner that conflicts in any way with the *** Child Care Act or the DCFS regulations," the court held that it was preempted by state law and was "null and void."[1] Accordingly, the court ruled that Olympia Fields could not invoke its zoning regula-

---

[1]Although the appellate court did not address the point, and

tions to limit the number of children that may be cared for in a day-care home, to restrict the employment of nonfamily members to assist in the care of children in a day-care home, or to limit operation of the day-care home to the building portion of the premises.

Based upon the foregoing determinations, the circuit court permanently enjoined Olympia Fields from regulating day-care homes, under its zoning ordinance or otherwise, "in a manner that conflicts in any way with the *** Child Care Act or the DCFS regulations." It further held "that, notwithstanding any presently-existing provisions of the Olympia Fields [zoning ordinance], Plaintiff is entitled to operate a day care home at [her residence] pursuant to the terms of her DCFS license."

With respect to counts IV and V of plaintiff's amended complaint, which alleged that Olympia Fields' actions had constituted an unconstitutional taking without just compensation, the circuit court believed that genuine issues of material fact remained. It therefore denied summary judgment as to both counts. Those counts remain pending, as do the claims asserted by plaintiff in counts VI, VII and VIII.

Although the circuit court's judgment did not finally dispose of all of plaintiff's claims, it included an express written finding that there was no just reason for delaying either enforcement or appeal. That finding permitted plaintiff to bring an immediate appeal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). We note parenthetically that because the circuit court's judgment

---

although it does not affect the outcome of this case, we feel obliged to point out that under Illinois law, an ordinance which is preempted is not, technically, null and void. Instead, it is "simply suspended or rendered unenforceable as long as the conflicting legislation of a superior legislative body remains in effect." *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 15 (1993).

granted an injunction, it would also have been immediately appealable pursuant to our Rule 307(a) (166 Ill. 2d R. 307(a)).

In the appellate court, Olympia Fields challenged the trial court's determination that its zoning ordinance had the effect of unlawfully excluding day-care homes from the village. It also argued that the trial court erred in determining that its power to regulate day-care homes through its zoning ordinance was preempted by state law to the extent that the ordinances conflicted with the Child Care Act and the DCFS regulations promulgated thereunder. Rejecting both arguments, the appellate court affirmed the trial court's judgment, with one justice specially concurring in part and dissenting in part. 328 Ill. App. 3d 301.

Our court granted Olympia Fields' petition for leave to appeal pursuant to Supreme Court Rule 315(a) (177 Ill. 2d R. 315(a)). We subsequently allowed motions by the following governmental entities and private organizations for leave to file briefs as *amici curiae*: (1) the City of Rockford; (2) the Villages of Grayslake, Hinsdale, La Grange and Lake Zurich; and (3) Voices for Illinois Children, Day Care Action Council of Illinois, the Carole Robertson Center for Learning, the Human Development Center, the Women's Business Development Center, and the Women's Self-Employment Project. 155 Ill. 2d R. 345. In addition, we permitted DCFS to file a "statement of position."

In our court, as it did in the appellate court, Olympia Fields raises two basic arguments: first, that its zoning ordinance does not have the effect of unlawfully excluding day-care homes from the village, and second, that its power to regulate day-care homes through its zoning ordinance has not been preempted by state law. No issue is raised as to the trial court's dismissal of count I, which concerned Olympia Fields' construction of the "home oc-

cupation" provision in the zoning ordinance, or its refusal to grant summary judgment on counts IV and V, which asserted that defendants' interpretation of its zoning ordinance to deny plaintiff permission to operate a day-care home pursuant to her state-issued license constituted a taking without just compensation in violation of the federal and state constitutions.

Before we proceed to the merits of Olympia Fields' appeal, a procedural issue warrants comment. When Olympia Fields denied plaintiff the zoning variance she requested, plaintiff did not seek administrative review of the denial in circuit court. Rather, she initiated this independent civil action for declaratory and injunctive relief and damages. The lack of administrative review, however, is not an impediment to plaintiff's cause of action.

It is true that under the Illinois Municipal Code (65 ILCS 5/1—1—1 *et seq.* (West 2000)), all final administrative decisions by a zoning board of appeals are subject to judicial review pursuant to the provisions of the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)). See 65 ILCS 5/11—13—13 (West 2000). That includes decisions regarding variances. 65 ILCS 5/11—13—4, 11—13—5 (West 2000).

It is also true that review of a final administrative decision in circuit court in accordance with the Administrative Review Law is regarded as an administrative remedy subject to the exhaustion doctrine. Where the Administrative Review Law is applicable and provides a remedy, a court may not redress a party's grievances through any other type of action. The circuit court's power to resolve factual and legal issues arising from the challenged decision must be exercised within its review of the decision under the Administrative Review Law and not in a separate proceeding. *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 551-52 (1999).

In the case before us now, however, the final decision was rendered by Olympia Fields' board of trustees rather than by a zoning board of appeals. The Illinois Municipal Code expressly authorizes the corporate authorities of municipalities with fewer than 500,000 residents to reserve to themselves the power to determine and approve zoning variances. When corporate authorities elect to retain the power to determine and approve zoning variances, as the village trustees in this case did, that power can only be exercised through adoption of ordinances. 65 ILCS 5/11—13—5 (West 2000).[2] The enactment of an ordinance is a legislative act. See *Kleidon v. City of Hickory Hills*, 120 Ill. App. 3d 1043, 1046 (1983). So, too, is the refusal of a legislative agency, whether a municipality or a county, to amend its ordinances. See *Smith v. County Board*, 86 Ill. App. 3d 708, 714-15 (1980).

The Administrative Review Law does not apply to the legislative acts of legislative bodies. See *Fitzpatrick v. City of Springfield*, 10 Ill. App. 3d 317, 320-21 (1973). Administrative review is applicable only where the legislative body transfers to some administrative agency the authority to administer the ordinance. See *Smith v. County Board*, 86 Ill. App. 3d at 715. Accordingly, where zoning action is taken by the legislative body itself, as it was in this case, a civil proceeding challenging the legislative body's action is not subject to attack on the grounds

---

[2]In this regard, the case before us here is distinguishable from our recent decision in *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164 (2002). *People ex rel. Klaeren v. Village of Lisle* involved a special use permit, not an application for a variance. Illinois law makes a clear distinction between variances and special uses. Variances come into play where the desired use is forbidden under existing zoning ordinances. A special use, on the other hand, allows a property owner to use his property in a manner the zoning ordinances already address and allow. *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 17 (2001).

that the plaintiff failed to proceed under the Administrative Review Law. Administrative review under the statute is not required. See *Camardo v. Village of La Grange Park*, 61 Ill. App. 2d 302, 308 (1965). Indeed, proceedings to secure review of a legislative determination under the Administrative Review Law would be a nullity. See *Flowers v. Village of Indian Creek*, 22 Ill. App. 3d 6, 9 (1974). Plaintiff's action for declaratory and injunctive relief and damages is therefore not subject to challenge on the grounds that she failed to exhaust her administrative remedies.

Failure to exhaust administrative remedies is not an available defense in this case for two additional reasons as well. First, to the extent that plaintiff alleges that Olympia Fields lacked statutory authority to bar operation of a day-care home licensed by the state, she is challenging the village's jurisdiction. Such challenges are not subject to the exhaustion doctrine. See *County of Knox ex rel. Masterson*, 188 Ill. 2d at 552-55. Second, the exhaustion doctrine was not raised by defendants as a basis for challenging plaintiff's complaint when this matter was pending in the circuit court. Failure to exhaust administrative remedies is an affirmative defense that is waived if not raised in the trial court. *People v. Fiorini*, 143 Ill. 2d 318, 337 (1991). As a result, defendants would be precluded from invoking the doctrine now even if it were applicable in cases such as this.

We turn, then, to the merits of defendants' appeal. As we indicated previously, this matter arose from an order of the circuit court granting in part and denying in part cross-motions for summary judgment. At issue is the construction of and interplay between Olympia Fields' zoning ordinance, on the one hand, and the Child Care Act and related DCFS regulations, on the other. Resolution of that issue is a matter of statutory interpretation and constitutional law. The applicability and effect

of constitutional provisions, the interpretation of statutes and ordinances, and the evaluation of whether summary judgment should have been allowed in a case all present questions of law, which this court reviews *de novo*. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 46 (2002); *People v. Lindsey*, 199 Ill. 2d 460, 463 (2002); see *Memory Gardens Cemetery, Inc. v. Village of Arlington Heights*, 250 Ill. App. 3d 553, 561 (1993).

In analyzing the relationship between Olympia Fields' zoning ordinance and state law regulating day-care homes, we begin by noting that Olympia Fields is a non-home-rule unit of government. As such, it is governed by article VII, section 7, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, § 7). Article VII, section 7, confers six basic powers on non-home-rule municipalities such as Olympia Fields: (1) the power to make local improvements by special assessments; (2-4) the power, through referendum, to adopt, alter or repeal their forms of government and to provide for "their officers, manner of selection and terms of office"; and (5-6) the power to incur debt and to levy or impose additional taxes, subject to certain exceptions and limitations. Ill. Const. 1970, art. VII, § 7.

Beyond the foregoing enumerated powers, "municipalities which are not home rule units shall have only powers granted to them by law." Ill. Const. 1970, art. VII, § 7. They have no inherent powers. *Ross v. City of Geneva*, 71 Ill. 2d 27, 31 (1978). They may exercise only those powers that the state legislature confers upon them, either expressly or impliedly, by statute. *American Telephone & Telegraph Co. v. Village of Arlington Heights*, 156 Ill. 2d 399, 460 (1993) (Bilandic, J., dissenting), citing *Pesticide Public Policy Foundation v. Village of Wauconda*, 117 Ill. 2d 107, 111-12 (1987).

To the extent that Olympia Fields has the authority to regulate land use through zoning, that power derives

from article 11, division 13, of the Illinois Municipal Code (65 ILCS 5/11—13—1 *et seq.* (West 2000)). That statute confers on corporate authorities in municipalities the power:

"(4) to classify, regulate and restrict the location of trades and industries and the location of buildings designed for specified industrial, business, residential, and other uses; (5) to divide the entire municipality into districts of such number, shape, area, and of such different classes (according to use of land and buildings, height and bulk of buildings, intensity of the use of lot area, area of open spaces, or other classification) as may be deemed best suited to carry out the purposes of this Division 13; (6) to fix standards to which buildings or structures therein shall conform; (7) to prohibit uses, buildings, or structures incompatible with the character of such districts ***."

Consistent with this statutory authorization, Olympia Fields' zoning ordinance divides the village into districts according to the criteria set forth in the law, establishes the standards to which buildings and structures in each district must conform, and prohibits certain uses in certain districts. To this extent, the ordinances are uncontroversial. The dispute here has centered on the precise scope of the village's power to prohibit uses it deems incompatible with the districts it has established. While article 11, division 13, of the Illinois Municipal Code (65 ILCS 5/11—13—1 *et seq.* (West 2000)) unquestionably authorizes Olympia Fields to exclude a particular use from a particular district, the appellate court believed that the village zoning ordinance, as applied, had the effect of completely excluding licensed day-care homes from anywhere within the village. In the appellate court's view, the total exclusion of a lawful use exceeds a municipality's statutory authority and is impermissible.

Olympia Fields countered this argument by asserting that its zoning ordinance does not, in fact, completely exclude day-care homes from the village. The appellate

court rejected that argument and so do we. While it may be possible to operate various kinds of child-care facilities within the corporate limits of Olympia Fields, this case concerns day-care homes. Day-care homes are a separate and specific type of child-care facility under the Child Care Act. By definition, a day-care home is conducted in a "family home." 225 ILCS 10/2.18 (West 2000). A "family home" is synonymous with a "family residence" and refers to the "location or portion of a location where the applicant and his or her family reside." 89 Ill. Adm. Code § 406.2 (2002). Under the Olympia Fields' zoning ordinance, individuals may only reside in districts zoned residential. Accordingly, the only possible place a day-care home could be operated in Olympia Fields is in one of its residential districts.

Under the terms of the village's zoning ordinance, the only businesses permitted in residential districts, aside from temporary real estate offices, are "home occupations." There is no longer any dispute that day-care homes do not meet the ordinance's definition of a home occupation. Because day-care homes are not permissible as a home occupation, they fall within the category of uses that are not specifically permitted. Pursuant to section 22—171 of the village's zoning ordinance, a use that is not specifically listed as a permitted use is presumed to be expressly prohibited absent a written decision by the zoning board of appeals. No such decision exists here. In addition, no basis exists for overcoming the presumption of express prohibition. We must therefore conclude that day-care homes are expressly prohibited in Olympia Fields.

This conclusion is consistent with basic principles of zoning law. As noted earlier in this opinion, variances stand in contrast to special use permits. Special use permits allow property owners to put property to a use that zoning enactments expressly authorize. Variances,

by contrast, presuppose that under the terms of the existing ordinance, the proposed use is forbidden. *Living Word Outreach*, 196 Ill. 2d at 17. They are changes in the law to permit what, absent a change, the law would not allow. Had Olympia Fields' zoning ordinance not prohibited the operation of day-care homes, the question of a variance would therefore not even have arisen. Accordingly, the appellate court did not err when it determined that the zoning ordinance completely excludes day-care homes from operating anywhere in the village.

The appellate court regarded the exclusionary effect of the zoning ordinance to be dispositive of plaintiff's claim. In its view, the ordinance must be deemed invalid because municipalities do not have the power under Illinois law to wholly exclude a lawful business from their boundaries. Defendants and certain of the *amici* who support defendants take strenuous exception to that proposition. In their view, there may be circumstances where the total exclusion of a particular use is permissible. *Amici* the Villages of Grayslake, Hinsdale, La Grange and Lake Zurich argue, for example, that if municipalities are required to permit every lawful use of property, a residential community that contains no districts zoned for manufacturing or industrial uses could nevertheless be obligated to allow operation of a manufacturing or industrial facility such as a tannery. They contend that the law should not countenance such a result.

The point is a fair one. We need not resolve it here, however, for even if municipalities do possess the authority to engage in exclusionary zoning in appropriate circumstances, that power would not extend to the situation presented by this case. Because it is a non-home-rule unit, Olympia Fields cannot adopt ordinances under a general grant of power that infringe upon the spirit of state law or are repugnant to the general policy of the

state. Although the village possesses zoning powers by virtue of article 11, division 13, of the Illinois Municipal Code (65 ILCS 5/11—13—1 *et seq.* (West 2000)), ordinances enacted under those powers that conflict with the spirit and purpose of a state statute are preempted by the statute. See *Commonwealth Edison Co. v. City of Warrenville*, 288 Ill. App. 3d 373, 380 (1997). "[W]here there is a conflict between a statute and an ordinance, the ordinance must give way." *Village of Mundelein v. Hartnett*, 117 Ill. App. 3d 1011, 1015 (1983).

As detailed earlier in this disposition, the operation of child-care facilities in Illinois is regulated by the state. The governing statute is the Child Care Act of 1969 (225 ILCS 10/1 *et seq.* (West 2000)), which requires "[a]ny person, group of persons or corporation who or which receives children or arranges for care or placement of one or more children unrelated to the operator" to apply for and obtain a license from the Department of Children and Family Services (DCFS). 225 ILCS 10/4(a) (West 2000). Under the Act, responsibility for prescribing and publishing "minimum standards for licensing that apply to the various types of facilities for child care defined in [the] Act," including day-care homes, rests with DCFS. 225 ILCS 10/7(a) (West 2000).

Pursuant to its statutory authority, DCFS has promulgated comprehensive regulations governing the physical facilities a day-care home must possess (89 Ill. Adm. Code § 406.8 (2002)); the characteristics and qualifications of the home's family, caregivers, assistants and substitute caregivers (89 Ill. Adm. Code §§ 406.9 through 406.11 (2002)); the number and ages of children the home may serve (89 Ill. Adm. Code § 406.13 (2002)); the opportunities for daily activity the home must provide to the children (89 Ill. Adm. Code § 406.16 (2002)); and a wide variety of other matters ranging from nutrition and meals (89 Ill. Adm. Code § 406.17 (2002))

to recordkeeping (89 Ill. Adm. Code § 406.24 (2002)). These standards apply uniformly throughout the state.

The foregoing regulatory scheme is comparable in breadth to the one considered by this court in *Pesticide Public Policy Foundation v. Village of Wauconda*, 117 Ill. 2d 107 (1987). *Pesticide Public Policy Foundation* concerned the system enacted by the General Assembly for regulation of pesticides. As with the regulations for child care at issue in this case, the pesticide statutes in *Pesticide Public Policy Foundation* established statewide standards and licensing requirements and gave regulatory and enforcement authority to agencies of state government. "[N]otably absent from the [state statutes was] any provision delegating authority to, or allowing regulation by, units of local government." *Pesticide Public Policy Foundation*, 117 Ill. 2d at 116. The Village of Wauconda nevertheless enacted a local ordinance that purported to impose separate and additional requirements on individuals who wished to apply pesticides.

If followed, Wauconda's ordinance would have enabled the village, which was a non-home-rule unit, to prevent persons from applying pesticides even though they had been duly licensed to do so by the state. We found that to be impermissible. "To allow a local non-home-rule unit of government to override the determinations of the legislature would frustrate the purposes of the [state pesticide statutes]." *Pesticide Public Policy Foundation*, 117 Ill. 2d at 119. Because of the comprehensiveness of the state statutes and because of the legislature's interest in imposing uniform standards, we concluded that the state statutes preempted Wauconda from enacting its ordinance regulating pesticides. *Pesticide Public Policy Foundation*, 117 Ill. 2d at 120.

We believe that the same principles hold true with respect to the relationship between the Child Care Act and its attendant regulations and the Olympia Fields

zoning ordinance. Indeed, the need to invoke the preemption doctrine is even more compelling here than in *Pesticide Public Policy Foundation*. In *Pesticide Public Policy Foundation* the challenged ordinance merely made the business of pesticide application more onerous. A person licensed by the state could still ply his trade if he conformed to the additional requirements imposed by the municipality. In this case, by contrast, the municipality's ordinance stands as a complete bar to the operation of a state-licensed day-care home. Under Olympia Fields' zoning ordinance, the licensing system for day-care homes is rendered a nullity.

Finally, defendants contend that if the General Assembly had intended the Child Care Act and its regulations to have preemptive effect, it would have said so explicitly in the legislation. In support of that argument, defendants cite examples of legislation from various foreign jurisdictions that specifically curtail or prohibit local regulation of day-care homes. We do not find those examples helpful to our analysis. There is no question that preemption can be accomplished through explicit statutory language. That preemption *can* be achieved explicitly does not mean, however, that it *must* be done explicitly. The law of Illinois recognizes preemption by implication. That doctrine holds that where the legislature has enacted a comprehensive system of regulation and licensure, as it did in this case, the legislature implies by that system that there is no room for regulation by local governmental units. *Pesticide Public Policy Foundation*, 117 Ill. 2d at 115. The absence of an express prohibition against local regulation in the Child Care Act is therefore not an impediment to application of the doctrine of preemption to the dispute before us.

For the foregoing reasons, the appellate court acted correctly when it upheld the judgment of the circuit court. Pursuit to the circuit court's ruling, Olympia

Fields is prohibited from regulating day-care homes under its zoning ordinance in a manner that conflicts in any way with the Child Care Act of 1969 or the DCFS regulations adopted pursuant to that Act. In addition, plaintiff is entitled to operate a day-care home at her residence pursuant to the terms of her DCFS license. No separate questions have been raised regarding the propriety of that relief. The judgment of the appellate court is therefore affirmed.

*Affirmed.*

JUSTICE GARMAN, dissenting:

I agree with the majority that non-home-rule municipalities have the authority to regulate land use through zoning and that article 11, division 13, of the Illinois Municipal Code (65 ILCS 5/11—13—1 *et seq.* (West 2000)) "unquestionably authorizes Olympia Fields to exclude a particular use from a particular district." 204 Ill. 2d at 256. The majority concedes that Olympia Fields is within its authority in promulgating ordinances that "divide[ ] the village into districts according to the criteria set forth in the law, establish[ ] the standards to which buildings and structures in each district must conform, and prohibit[ ] certain uses in certain districts." 204 Ill. 2d at 256. However, I disagree with the majority that the zoning ordinance in question expressly prohibits day-care homes in Olympia Fields and that the Child Care Act of 1969 and the DCFS regulations adopted pursuant to the Act have a preemptive effect.

In Olympia Fields, a proposed home business must satisfy either the performance criteria set forth in the home occupation ordinance or receive a variance under the municipality's procedures. A home occupation is permitted based in part on the nature of the business proposed and on the impact it will have on the surrounding community. The majority states that there "is no longer any dispute that day-care homes do not meet the

ordinance's definition of a home occupation." 204 Ill. 2d at 257. The declaration that *all* day-care homes fail to meet the ordinance's definition of a home occupation is unwarranted. While this particular proposed day-care home may fail to satisfy the requirements set forth in the ordinance, it cannot be said categorically that *no* day-care home could ever be deemed a home occupation. In fact, one could easily conceive of a situation where a proposed day-care home would meet the definition of home occupation under the ordinance. For example, a proposed day-care home owned and operated solely by the residents of the home, adjacent to a park, without a sign or other profound exterior indications of home occupation, and not requiring alteration of the essential character of the building, could fall within the ordinance's definition of home occupation.

Assuming, *arguendo*, that the majority's conclusion that the home occupation ordinance contains restrictions effectively prohibiting day-care homes is correct, I do not agree that the ordinance in question is rendered unconstitutionally exclusionary. A use variance extends to property owners the ability to use property in a manner forbidden by zoning enactments. *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1 (2001). Exclusionary zoning occurs when a municipality totally excludes a business from operating anywhere within its corporate boundaries, without exception. It is clear that Olympia Fields allows day-care homes, without a variance, if the operation is run by members of the family who occupy the premises, if the day-care home is run wholly within the principal or an accessory building, and if there is no exterior indication of the home occupation. If the proposed day-care home does not meet these criteria, as was the case in this instance, the prospective operator has the ability to apply for a variance. Therefore, the ordinance does

not operate as a blanket exclusion of day-care homes throughout Olympia Fields, but rather allows for a case-by-case determination of whether this home occupation, or any other proposed home occupation, is appropriate at a particular location.

The majority relies heavily on our holding in *Pesticide Public Policy Foundation* to find that the local ordinance must give way to state law because the operation of child-care facilities in Illinois is regulated by the state. In *Pesticide Public Policy Foundation,* a non-home-rule municipality promulgated an ordinance that imposed requirements separate from and in addition to those enacted by the state for individuals who wished to apply pesticides. We held that because of the comprehensiveness of the state regulations, and because of a legislative interest in a uniform scheme of pesticide regulation, the non-home-rule municipality was preempted by state law from enacting local ordinances regulating pesticides. The majority contends that the challenged ordinance in that case "merely made the business of pesticide application more onerous" and that a person "could still ply his trade if he conformed to the additional requirements imposed by the municipality." 204 Ill. 2d at 261. By contrast, the majority contends that Olympia Fields' ordinance stands as a complete bar to the operation of a state-licensed day-care home and that the licensing system for day-care homes is rendered a nullity. 204 Ill. 2d at 261.

*Pesticide Public Policy Foundation* is clearly distinguishable from this matter. Unlike the ordinance at issue in *Pesticide Public Policy Foundation,* the ordinance in question in this instance does not attempt to regulate licensure or impose additional requirements for obtaining certification for the operation of a day-care home. The Child Care Act is designed to insure that the operators of child-care facilities do so in a manner that protects the safety of and promotes healthy environments for

children receiving child care. The Olympia Fields ordinance simply attempts to determine whether a licensed child-care facility may operate at a particular location in a manner that will not interfere with the essential character of a specific neighborhood or the quiet use and enjoyment of property by neighboring property owners. Olympia Fields is not attempting to regulate child care. It is simply regulating the location of industry and the location of buildings designed for specific industrial, business, residential, and other uses within its boundaries, as it is allowed to do pursuant to our constitution and the Municipal Code. The Act is silent as to the relationship between the regulated service provider and the surrounding property owners, or as to the ability of municipalities to determine whether a home day-care is appropriate in specific locations. If the legislature had intended that the licensing requirements of the Act would serve as a complete bar to local zoning authority as it relates to child-care facilities, it could have readily done so in a single sentence. It did not, and we should not do so in its stead.

I believe this case is more like *Builders Supply & Lumber Co. v. City of Northlake*, 21 Ill. 2d 14 (1960). In *Builders Supply & Lumber Co.*, the plaintiff challenged a local zoning ordinance because it did not affirmatively allow multifamily dwellings. We held that the ordinance "does not prohibit multiple dwellings, it merely fails to provide for the same." *Builders Supply & Lumber Co.*, 21 Ill. 2d at 18. Because a multifamily dwelling may be a legitimate use of land in some areas of the community and not in others, it would be necessary to "prove the character of the neighborhood, the classification and the use of nearby property, the extent to which property values are diminished by the particular zoning restrictions involved, the gain to the public compared to the hardship imposed upon individual property owners, and

thus determine whether the purported exercise of the police power is unreasonable or confiscatory." *Builders Supply & Lumber Co.*, 21 Ill. 2d at 18. In other words, the validity of a particular municipal zoning decision must be determined on a case-by-case basis.

I believe the same considerations are important in this instance. As argued by the appellant, a proposed day-care home located on a corner lot, with a spacious backyard, near a park, and serving a small number of children is entirely permissible, if not desirable. However, a proposed facility for a dozen or more children, at a small mid-block house on a busy street, with limited yard space, and with no driveway or drop-off area might be extremely disruptive to neighboring property owners' quiet use and enjoyment of their investments. Unfortunately, the effect of the majority's holding is that a municipality has no authority to conduct case-by-case zoning analyses of day-care home requests and that competing interests will not be considered. So long as the proposed operator has completed the requisite licensing requirements, he or she could operate a day-care home at the corner of the busiest intersection in town and the municipality and neighboring residents could do nothing about it.

The State of Illinois issues licenses or permits for numerous and diverse occupations as part of its regulating authority. However, the issuance of a state license is not an entitlement to operate a business wherever one sees fit, irrespective of the rights and interests of adjacent property owners and local governments established to protect and provide for residents. Today's holding threatens the ability of a non-home-rule municipality to exercise any measure of control over the location of a state-regulated business within its own boundaries and, therefore, the ability to preserve the integrity of its residential neighborhoods from potentially incompatible

uses. I fear this holding severely erodes long-standing principles of local governmental control inherent in our state constitution and developed through both statutory and case law.

I respectfully dissent and would reverse the trial and appellate courts' findings that the zoning ordinance had the effect of unlawfully excluding day-care homes from the village.

JUSTICE KILBRIDE joins in this dissent.