2025 IL App (3d) 240513

Opinion filed August 1, 2025

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| HICKORY WIND, LLC, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff-Appellant, | ) | La Salle County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| THE VILLAGE OF CEDAR POINT; KEVIN | ) | |
| LAFOLLETTE, in His Official Capacity as | ) | |
| Mayor of the Village of Cedar Point; TODD | ) | |
| HANNEN, in His Official Capacity as a | ) | |
| Commissioner of the Village of Cedar Point; | ) | |
| MICHAEL MARGIS, in His Official Capacity | ) | |
| as a Commissioner of the Village of Cedar | ) | Appeal No. 3-24-0513 |
| Point; and MARTIN KOTECKI, in His Official | ) | Circuit No. 23-MR-52 |
| Capacity as a Commissioner of the Village of | ) | |
| Cedar Point, | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | |
| | ) | |
| (William Sherman II and William | ) | The Honorable |
| Sherman III, | ) | Troy D. Holland, |
| | ) | Judge, presiding. |
| Intervenors-Appellees). | ) | |
| | ) | |

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Justice Davenport concurred in the judgment and opinion.
Presiding Justice Brennan dissented, with opinion.

**OPINION**

¶ 1    The Village of Cedar Point (Village) enacted a zoning ordinance restricting the generating power of wind energy conversion systems. Hickory Wind, LLC, filed a complaint asserting that the ordinance was constitutionally invalid and outside the scope of the Village's statutory authority. Various neighboring landowners sought to intervene, some supporting the lawsuit and others opposing it. The parties filed cross-motions for summary judgment, and the trial court entered summary judgment in favor of the Village. Hickory Wind appealed, and we reverse that summary judgment order and grant Hickory Wind's motion for summary judgment.

¶ 2                              I. BACKGROUND

¶ 3    Hickory Wind intends to invest $138 million in a utility-scale wind farm (the project) in La Salle County, Illinois. The sites selected for the project are on unincorporated land located outside, but within 1.5 miles of Cedar Point's village limits. Hickory Wind selected that location based on the availability of suitable wind resources, as well as the presence of flat, open land near existing power transmission infrastructure. To secure access, Hickory Wind executed lease agreements with the relevant landowners. Plans for the project included the construction of a maximum of 17 wind turbines, sited on 13 primary locations and 4 alternative locations, as well as numerous underground electrical collection lines, crane pads and paths, access roads, a meteorological tower, and other needed structures.

¶ 4    A non-home-rule municipality like the Village can generally regulate commercial wind towers within its borders. However, when it comes to wind farms, our legislature granted municipalities the authority to regulate areas 1.5 miles beyond municipal borders. That is what Cedar Point set out to do.

¶ 5    In March 2023, the Village filed a draft text amendment to its original 1965 zoning ordinance, Village of Cedar Point Zoning Ordinance No. 163-B (eff. Nov. 9, 1965). The amendment regulated wind energy conversion systems both within the corporate limits and in an area 1.5 miles outside of those limits. Hickory Wind was notified of a hearing before the Planning Commission on the proposed amendment scheduled for April 26, 2023. After holding hearings on April 26 and May 15, 2023, the Planning Commission recommended that the amendment be adopted. The Village Council enacted the amendment as new Village of Cedar Point Zoning Ordinance No. 453 (eff. May 15, 2023) (Ordinance). In part, Ordinance 453 inserted the following provision into section IV(A) of Ordinance No. 163-B:

> "8. No person may locate, construct or operate a Wind Energy Conversion Structure (WECS) or Wind Turbine designed to generate greater than 120% of the electricity demand for the parcel on which it is located within the corporate limits of the Village of Cedar Point or within the distance of one- and one-half miles beyond the corporate limits of the Village of Cedar Point. A Wind Energy Conversion Structure (WECS) or Wind Turbine located, constructed or operated in violation of this prohibition shall be deemed to constitute a nuisance hereunder." Village of Cedar Point Zoning Ordinance No. 453, § 3 (eff. May 15, 2023).

The Village also imposed a penalty of between $250 and $750 per day on each violation. Village of Cedar Point Zoning Ordinance No. 453, § 4 (eff. May 15, 2023).

¶ 6    On August 14, 2023, Hickory Wind filed a two-count complaint against the Village and some of its Village officials (referenced collectively herein) in the La Salle County circuit court, seeking to bar the Village from enforcing the new ordinance through declaratory judgment in Count I and injunctive relief in Count II. The trial court permitted William Sherman II and William

Sherman III (together, Sherman Intervenors)—as well as James G. Johnson, Christene A. Johnson, Currie Family Farm, LLC, Lavens Family Farm, LLC, Frederick Carus, Carusbrooke Farms, Inc., Robert W. Johnson, Carl J. Snider, Mark S. Snider, and Whitaker, LLC, (together, Landowner Intervenors)—to intervene in the proceedings. The Sherman Intervenors own land near the proposed project site, while the Landowner Intervenors own the land on which the project was to be built.

¶ 7　　　　The Village filed a motion seeking summary judgment, and Hickory Wind filed its own motion for summary judgment on the declaratory judgment claim in Count I. Hickory Wind's motion was later joined by the Landowner Intervenors. The Sherman Intervenors also filed a summary judgment motion. On July 23, 2024, the trial court granted summary judgment in favor of the Village and the Sherman Intervenors and denied Hickory Wind's motion. In its ruling, the trial court found that (1) the Ordinance was not preempted by either public policy or Illinois law, (2) Hickory Wind failed to offer evidence showing that the Ordinance constituted an invalid exercise of the Village's authority or an impermissible exclusionary zoning, (3) the Village had used proper process in adopting the Ordinance, and (4) any as-applied challenge was not yet ripe for decision. Hickory Wind filed a timely notice of appeal.

¶ 8　　　　　　　　　　　　　　　II. ANALYSIS

¶ 9　　　　On appeal, Hickory Wind claims that the trial court erred in denying its motion for summary judgment and, instead, granting summary judgment for the Village and Sherman Intervenors. Hickory Wind raises four arguments in support of its position. It asserts that (1) the Ordinance was not a valid exercise of the Village's authority, (2) the Ordinance was unconstitutional, (3) the Ordinance was preempted by Illinois law, and (4) its challenge was ripe for review. Rulings on motions for summary judgment are reviewed *de novo*. *Village of Chatham*

4

*v. County of Sangamon*, 351 Ill. App. 3d 889, 893 (2004). Summary judgment may be granted only in the absence of any genuine issues of material fact and when the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Because an ordinance is a legislative act, we construe it *de novo*, applying the usual rules of statutory construction. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 7 (2009). In addition, we review questions of law, such as the issues of preemption and the constitutionality of a legislative act, *de novo. Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 254-55 (2003); *Village of Northfield v. BP America, Inc.*, 403 Ill. App. 3d 55, 58 (2010).

¶ 10    We first consider whether the Village's enactment of the Ordinance exceeded its statutory grant of authority. At the outset, we note that we are talking about a non-home-rule municipality that can only exercise the powers given to it by statute. See *Hawthorne*, 204 Ill. 2d at 255; see also *Baltis v. Village of Westchester*, 3 Ill. 2d 388, 397 (1954) (stating "If [ordinances are] in conformity with the express or necessarily implicit grant in the charter they are valid; otherwise not."); *Englum v. City of Charleston*, 2017 IL App (4th) 160747, ¶ 69 (stating "[A]ny doubt concerning the grant of power to a non-home-rule entity is resolved against the non-home-rule entity."); *Raven's Place, LLC v. City of Blue Island*, No. 23-cv-00728, 2024 WL 182243, at *3 (N.D. Ill. Jan. 17, 2024) (stating "Non-home rule units cannot act contrary to 'the spirit of state law . . . and the general policy of the state.' [Citation.] Thus, non-home rule powers *** are strictly construed. [Citation.] Any doubts as to the existence of a power must be resolved against the municipality. [Citation.]").

¶ 11    Hickory Wind maintains that the Village's adoption of the Ordinance is not authorized under section 11-13-26(a) of the Illinois Municipal Code (65 ILCS 5/11-13-26(a) (West 2022)) because it did not "regulate wind farms and electric-generating wind devices within its zoning

5

jurisdiction and within the 1.5 mile radius surrounding its zoning jurisdiction," as authorized by the statute. Instead, Hickory Winds maintains that the Ordinance prohibits all wind farms. It points to a portion of the preamble, incorporated into the Ordinance, stating that

> "the corporate authorities of the Village of Cedar Point, Illinois, have determined it to be in the best interests of the Village and its citizens, to prohibit wind farms, wind energy conversion systems or electric-generating wind devices within its zoning jurisdiction and within the 1.5 mile radius surrounding its zoning jurisdiction."

Village of Cedar Point Zoning Ordinance No. 453 (eff. May 15, 2023). The trial court rejected those arguments, finding that the Village acted within the scope of its statutory authority because the Ordinance did not bar all wind energy conversion systems. We disagree with the trial court's ruling.

¶ 12 As a non-home-rule unit, the Village "may exercise only those powers that the state legislature confers upon [it] either expressly or impliedly, by statute." *Hawthorne*, 204 Ill. 2d at 255. In this case, the legislature has expressly granted the Village the power to regulate wind energy conversion systems located within 1.5 miles of its borders. 65 ILCS 5/11-13-26(a) (West 2022). But regulation and prohibition are not the same thing.

¶ 13 In Illinois, a zoning ordinance is impermissibly exclusionary if an activity is "effectively prohibited anywhere within the municipal limits." (Internal quotation marks omitted.) *Hawthorne v. Village of Olympia Fields*, 328 Ill. App. 3d 301, 309 (2002). Exclusionary zoning includes any ordinance that does not prohibit a particular land use by its terms but, instead, fails to provide for that use. See *Oak Forest Mobile Home Park, Inc. v. City of Oak Forest*, 27 Ill. App. 3d 303, 319 (1975) (citing *High Meadows Park, Inc. v. City of Aurora*, 112 Ill. App. 2d 220, 230 (1969)).

¶ 14    In *Hawthorne*, the Village of Olympia Fields denied the plaintiff a zoning variance that would have allowed her to operate a day care as a home occupation. *Hawthorne*, 328 Ill. App. 3d at 304-05. During a public hearing on the request, local residents expressed concerns about increased traffic, disruption of the area's residential tranquility, and the employment of non-residents at the day care. *Id.* at 305. After noting that "nowhere does the legislature grant to municipalities the power to wholly restrict a lawful business from their boundaries," the appellate court held that the Village's zoning ordinance, which wholly excluded the lawful business of home day care, contravened Illinois law. (Internal quotation marks omitted.) *Id.* at 309-10.

¶ 15    Our supreme court affirmed. *Hawthorne*, 204 Ill. 2d at 245. The court agreed that the zoning ordinance was a *de facto* ban on day-care facilities operating within private homes but expressly declined to consider whether it was unlawful on that basis. *Id.* at 258. Applying principles of preemption, the court explained that a non-home-rule unit "cannot adopt ordinances under a general grant of power that infringe upon the spirit of state law or are repugnant to the general policy of the state." *Id.* at 258-59. On that basis, the Illinois Supreme Court affirmed the circuit and appellate court decisions. *Id.* at 261-62.

¶ 16    While the supreme court followed a different analytical path than the appellate court, the supreme court did not reject or disagree with the appellate court's analysis; therefore, the appellate court's analysis remains good law. Regardless of whether we follow our supreme court's analysis, or the alternative view taken by the appellate court, we conclude that the Ordinance is impermissible.

¶ 17    Pursuant to its plain and unambiguous language, the Ordinance bars all wind energy conversion systems "designed to generate greater than 120% of the electricity demand for the parcel on which it is located within the corporate limits of the Village of Cedar Point or within the

7

distance of one- and one-half miles beyond the corporate limits of the Village of Cedar Point." Village of Cedar Point Zoning Ordinance No. 453, § 3 (eff. May 15, 2023). The Ordinance even incorporates a recital expressly reflecting that "it to be in the best interests of the Village and its citizens, to prohibit wind farms, wind energy conversion systems or electric-generating wind devices within" the specified area. Village of Cedar Point Zoning Ordinance No. 453 (eff. May 15, 2023). This is the type of regulation rejected by the appellate court in *Hawthorne*.

¶ 18        In reaching this conclusion, we reject the trial court finding that the Ordinance was not impermissibly exclusionary because it merely "limited" the capture of wind power. As Cedar Point's counsel begrudgingly admitted at oral argument, the effect of the Ordinance—by design—was to reduce the economic viability of commercial wind turbines to zero. That is not a mere limitation; it is a prohibition. A zoning ordinance is impermissibly exclusionary if the affected activity is " 'effectively prohibited anywhere within the municipal limits.' " *Hawthorne*, 328 Ill. App. 3d at 309 (quoting *Oak Forest Mobile Home Park*, 27 Ill. App. 3d at 318).

¶ 19        The analysis our supreme court followed in *Hawthorne* likewise dictates reversal here because the ordinance at issue conflicts with Illinois's stated public policy. Our legislature has declared that "it is the policy of this State to rapidly transition to 100% clean energy by 2050," in order "[t]o provide the highest quality of life for the residents of Illinois and to provide for a clean and healthy environment." 20 ILCS 3855/1-5(1.5) (West 2022). The legislature has further stated that

> "[i]t is necessary to improve the process of procuring electricity to serve Illinois residents, to promote investment in energy efficiency and demand-response measures, and to maintain and support development of clean coal technologies, generation resources that

8

operate at all hours of the day and under all weather conditions, zero emission facilities, and renewable resources." *Id.* § 1-5(4).

Moreover, the legislature has concluded that "procuring a diverse electricity supply portfolio will ensure the lowest total cost over time for adequate, reliable, efficient, and environmentally sustainable electric service." *Id.* § 1-5(5). By barring all large-scale wind generation systems within the targeted area, the Village has undermined the stated policy of this State, which encourages the optimal use of clean and renewable energy technologies.

¶ 20 Municipalities are well within their rights to shape their environments—nobody wants a sewage treatment plant next to a kindergarten. That is likely one reason why the State gave the Village the regulatory authority that exists in section 11-13-26(a) in the first instance. Reasonable limitations on things like height, blade length, tower density, and the like might have constituted perfectly acceptable methods of regulation. However, an ordinance that restricts energy generation in such a way that it renders commercial wind power economically impossible is both a violation of public policy and is also, in effect, an unauthorized ban. The statute permits *regulation*; if the legislature intended to give the Village authority to *ban* commercial windmills, it could have done so expressly.

¶ 21 Regulation exists to balance freedom with order, to channel private ambition without wrecking the public good. When government rules become so burdensome that compliance is impossible or economically irrational, the result is not regulation—it is prohibition. When the prohibition is contrary to public policy, it ceases to become an exercise of regulatory power and, instead, becomes a frustration of the very ends it was empowered to achieve.

9

¶ 22                                    III. CONCLUSION

¶ 23        Because we have resolved this case on nonconstitutional grounds, we decline to address

the additional constitutional arguments raised by the parties. See *The Carle Foundation v.*

*Cunningham Township*, 2017 IL 120427, ¶ 34 (stating that courts must not reach constitutional

issues if the case may be decided on nonconstitutional grounds). Accordingly, for the reasons

stated, the judgment of the circuit court of La Salle County is reversed, and Hickory Winds's

motion for summary judgment is granted.

¶ 24        Reversed.

¶ 25        PRESIDING JUSTICE BRENNAN, dissenting:

¶ 26        I dissent because, in striking down the Ordinance, the majority misapplies *Hawthorne* and

incorrectly resorts to public policy to thwart the considered judgment of the Village. Critical to the

holding of *Hawthorne* are two factors, neither of which are present in our case: (1) the absence of

specific statutory authority for the non-home-rule municipality to exercise its zoning authority and

(2) a countervailing preemptive regulatory scheme. Given the specific grant of authority to Illinois

municipalities to regulate wind farms and the absence of a preemptive statutory or regulatory

scheme, I would uphold the Ordinance.

¶ 27        In striking down the ordinance in *Hawthorne*, our supreme court observed how the

municipality's zoning authority, as a non-home-rule unit, derived from general grants of power in

the Illinois Municipal Code, specifically,

            "(4) to classify, regulate and restrict the location of trades and industries and the

            location of buildings designed for specified industrial, business, residential, and other uses;

            (5) to divide the entire municipality into districts of such number, shape, area, and of such

            different classes (according to use of land and buildings, height and bulk of buildings,

                                                    10

intensity of the use of lot area, area of open spaces, or other classification) as may be deemed best suited to carry out the purposes of this Division 13; (6) to fix standards to which buildings or structures therein shall conform; (7) to prohibit uses, buildings, or structures incompatible with the character of such districts ***." (Internal quotation marks omitted.) *Hawthorne*, 204 Ill. 2d at 256.

As to these general grants of power, the court, in disallowing the ordinance, held,

"Because it is a non-home-rule unit, Olympia Fields cannot adopt ordinances *under a general grant of power* that infringe upon the spirit of state law or are repugnant to the general policy of the state. *Although the village possesses zoning powers by virtue of article 11, division 13, of the Illinois Municipal Code* [citation], *ordinances enacted under those powers* that conflict with the spirit and purpose of a state statute are preempted by the statute." (Emphases added.) *Id.* at 258-59.

In so holding, the court noted the preemptive nature of the Child Care Act of 1969 (225 ILCS 10/1 *et seq.* (West 2000)), which gave DCFS the statewide authority to license and regulate home day cares, but further observed that " '[*n*]*otably absent*' " *from the statute was* " '*any provision delegating authority to, or allowing regulation by, units of local government*.' " (Emphasis added.) *Hawthorne*, 204 Ill. 2d at 260 (quoting *Pesticide Public Policy Foundation v. Village of Wauconda*, 117 Ill. 2d 107, 116 (1987)).

¶ 28     Unlike in *Hawthorne*, the Village does not rely upon the *general grant of power* afforded non-home-rule units of government by the Illinois Municipal Code. Rather, the Village's authority to regulate the placement of wind farms flows from a *specific grant of authority* under the municipal wind farm statute to "regulate wind farms and electric-generating wind devices within its zoning jurisdiction and within the 1.5 mile radius surrounding its zoning jurisdiction." 65 ILCS

11

5/11-13-26(a) (West 2022). Even accepting that the Ordinance renders the development of commercial wind farms economically unviable, the fact remains that it permits landowners to install energy-generating wind devices not generating in excess of 120% of the energy needs of the parcel. Thus, the Ordinance "regulate[s] wind farms and electric-generating wind devices within its zoning jurisdiction and within the 1.5 mile radius surrounding its zoning jurisdiction," as contemplated by statute. See *id.*

¶ 29    In striking down the Ordinance, the majority characterizes it as a *de facto* ban on commercial wind farms, which it maintains runs afoul of the State's clean energy public policy aiming to "rapidly transition to 100% clean energy by 2050," in order "[t]o provide the highest quality of life for the residents of Illinois and to provide for a clean and healthy environment." 20 ILCS 3855/1-5(1.5) (West 2022). However, by focusing on the State's public policy promoting clean energy goals, the majority ignores the absence of a preemptive regulatory scheme and gives short shrift to the public policy of the State that municipalities may "regulate wind farms and electric-generating wind devices within its zoning jurisdiction and within the 1.5 mile radius surrounding its zoning jurisdiction." 65 ILCS 5/11-13-26(a) (West 2022). The importance of this latter public policy, of course, follows from the potential impact that 17 650-feet-tall windmills (taller than the St. Louis Arch) will necessarily have on the value of nearby homes and the possible chill they may place on subsequent residential and commercial development.

¶ 30    We should defer to the considered judgment of the Village to the extent that section 11-13-26(a) specifically permits the regulation and where no regulatory scheme otherwise preempts the ordinance. I respectfully dissent.

12

*Hickory Wind, LLC v. Village of Cedar Point*, 2025 IL App (3d) 240513

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of La Salle County, No. 23-MR-52; the Hon. Troy D. Holland, Judge, presiding. |
| **Attorneys for Appellant:** | David D. Streicker, Benjamin M. Jacobi, and Savanna L. Barlow, of Polsinelli PC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | D. William Porter and Reagan F. Goins, of Chilton Yambert Porter LLP, of Geneva, for appellees Village of Cedar Point, Kevin LaFollette, Todd Hannen, Michael Margis, and Martin Kotecki.<br><br>Richard S. Porter and Eric M. Borneman, of Hinshaw & Culbertson LLP, of Rockford, and Catherine Basque Weiler, of Hinshaw & Culbertson LLP, of Chicago, for other appellees. |